779 F.2d 50
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
GLENDELL J. DEVINE, Petitioner,
v.
PITTSBURG AND MIDWAY COAL MINING COMPANY, et al. Respondents.
 84-3947
 United States Court of Appeals, Sixth Circuit.
 10/31/85
 
 PETITION FOR REVIEW GRANTED
 Ben.Rev.Bd.
 ON PETITION FOR REVIEW OF A DECISION OF THE BENEFITS REVIEW BOARD
 Before: MERRITT and CONTIE, Circuit Judges; and DeMASCIO, District Judge.*
 PER CURIAM.
 
 
 1
 Glendell Devine seeks review of a decision of the U. S. Department of Labor Benefits Review Board affirming the decision of the administra ive law judge concluding that Devine was not disabled as a result of pneumoconiosis acquired from his coal mine employment pursuant to 20 C.F.R. Sec. 727.203. For the reasons that follow, we grant the petition.
 
 I.
 
 2
 On March 6, 1979, Glendell Devine filed his claim for black lung benefits alleging that it was hard for him to exhale and that any quick exercise caused a shortness of breath. At a hearing on March 4, 1981, Devine indicated that he was born December 10, 1916, had an eighth grade education, and thirty years of coal mine employment. Devine had six or seven years of underground work and worked as a welder around the mine the remainder of the time, last working on November 11, 1978. Devine testified that the dust was worse on the surface than underground and that he constantly had to clean the dust off of the machinery he welded. Devine quit work at age 62 due to shortness of breath which had started three years earlier and gotten progressively worse. Devine worked for Pittsburg a Midway, appellee, from March 5, 1958 to November 11, 1978.
 
 
 3
 In a report of May 14, 1979, Valentino S. Simpao, M.D., noted wheezing and concluded that '[m]y impression of this patient is that he has Pulmonary Fibrosis with chronic Bronchitis. His pulmonary condition could be attributed to his previous job as a coal miner. His pulmonary disability appears to be total.' A pulmonary function study, completed by Richard A. Krumholz, M.D., found good cooperation by Devine and values of FEV1, 2.35, and MVV, 92. To establish a presumption of disability, these values would need to be less than or equal to 2.3 and 92, respectively. 20 CFR Sec. 727.203(a)(2). Krumholz reported that '[v]ital capacity and flow are normal with mild reduction in mid-flow. The forced vital capacity effort, however, is somewhat less than maximal.' Blood gas studies of May 14, 1979 yielded normal results. See 20 C.F.R. Sec. 727.203(a)(3).
 
 
 4
 Also included in the record are the depositions of several physicians. On December 17, 1980, William G. West, Jr., indicated that he had examined Devine, an x-ray, and his occupational and medical histories. West found rales and wheezes in the chest and clubbing of the fingertips. Further, West concluded that '[t]he absence of any heart murmurs or rapid heart rate or heart friction rules would tend to rule against the heart as playing any part in the shortness of breath that he complained of.' West examined an x-ray taken July 29, 1980 and found diffuse pulmonary fibrosis with nodular densities up to three millimeters in diameter. West found that generalized fibrosis points to coal workers' pneumoconiosis, that the disease was caused by chronic inhalation of coal dust, and recommended discontinuing work. Devine's pneumoconiosis 'keeps him from doing any type of work where he is going to have to have much breathing capacity. . . .' West is not a B-reader nor did he review blood gas or pulmonary function studies. West concluded that Devine was disabled from doing coal mine work by his pneumoconiosis.
 
 
 5
 Richard P. O'Neill, M.D., examined the same x-ray as West (7/29/80) and found 'bilateral reticulonodular infiltrate consistent with coal worker's pneumoconiosis, simple, state 1/1 (p and q).' O'Neill found that inhalation of coal dust caused Devine's disease and that Devine was disabled due to pneumoconiosis. From another x-ray, dated August 27, 1979, O'Neill found pneumoconiosis, simple, stage 3/3. O'Neill also completed normal blood gas studies and a pulmonary function study showing values of MVV, 78, and FEV, 2.91.
 
 
 6
 William H. Anderson, M.D., read the x-ray of July 29, 1980 as showing pneumoconiosis category 2/2. Anderson testified that the pneumoconiosis arose due to inhalation of respirable dusts, and that he would recommend no further exposure to coal dust.
 
 
 7
 On examination of the July 29, 1980 x-ray, Robert Penman, M.D., diagnosed pneumoconiosis 2/2 with nodulation throughout the lung fields. Penman suggested that the pneumoconiosis was due to exposure to coal dust and recommended no further exposure.
 
 
 8
 A pulmonary function study of November 12, 1980, showed normal values of FEV, 2.6, and MVV, 106.25, and normal blood gas studies. A pulmonary function study of January 21, 1981, Yielded values of FEV, 1.98, and MVV, 61, which meet the standards for invoking the presumption of disability pursuant to 20 C.F.R. Sec. 727.203(a)(2). Sam H. Traughber, M.D., found that the '[p]ulmonary function tests show moderately severe combined obstructive and restrictive ventilatory deficit with decreased forced vital capacity.'
 
 
 9
 Glenn Hicks, M.D., read the July 29, 1980 x-ray as showing pneumoconiosis, and W. S. Cole, M.D., read an x-ray of May 14, 1979 as showing small rounded opacities with a profusion of 1/0. J. O. Stokes, M.D., read the May 14, 1979 x-ray as showing small rounded opacities with a profusion of 1/1. R. Quillen, M.D., a B-reader read the August 21, 1980 x-ray as negative for pneumoconiosis.
 
 
 10
 On November 17, 1981, the ALJ denied Devine's claim, finding that Devine had been a coal miner for 30 years and that the presumption of disability had been raised by the x-ray interpretations. 20 C.F.R. Sec. 727.203(a)(1). The ALJ found that the pulmonary function studies were insufficient to raise the presumption pursuant to subsection 203(a)(2), discounting O'Neill's test because cooperation was listed only as 'fair,' and discounting Krumholz's test because the effort was less than maximal on the FVV. The ALJ found Traughber's test credible but found Anderson's test more persuasive, and found blood gas values insufficient to establish the presumption pursuant to subsection 203(a)(3). The ALJ also found that the presumption did not arise under subsection 203(a)(4) and discounted the opinions of West because he had no blood gas or pulmonary function studies, and Simpao's spirometry because it noted less than maximal effort.
 
 
 11
 The ALJ found that the presumption had been rebutted pursuant to subsection 203(b)(3) because the presence of heart disease demonstrates that claimant's ailment was not due to pneumoconiosis. The ALJ also found the presumption had been rebutted pursuant to subsection 203(b)(2) by Dr. Anderson's statement of February 11, 1981, finding, in light of the pulmonary function and blood gas studies, that 'Mr. Devine did not have at the time of his examination of 12 November 1980 any pulmonary impairment that would prevent his engaging in hard manual labor.' The ALJ found that claimant could do his usual coal mine work.
 
 
 12
 On October 18, 1984, the Benefits Review Board affirmed the ALJ's decision, finding that '[s]ince the employer does not contest the administrative law judge's invocation of the presumption based on the x-ray evidence, . . . it is unnecessary to discuss whether he [claimant] could have invoked the presumption under Section 727.203(a)(2), (4).' The Board upheld the finding of rebuttal pursuant to subsection 203(b)(2), and, accordingly, did not address rebuttal pursuant to subsection 203(b)(3).
 
 
 13
 Since Pittsburg did not challenge before the Board the triggering of the presumption pursuant to subsection 203(a)(1), we consider below only whether Pittsburg met its rebuttal burden pursuant to subsections 203(b)(2), (3).
 
 II.
 
 14
 This court's review of the Board is limited to scrutiny for errors of law and for adherence to the statutory standard of review. Director, Office of Workers' Compensation Programs v. Rowe, 710 F.2d 251, 254 (6th Cir. 1983). 'The findings of fact in the decision under review by the Board shall be conclusive if supported by substantial evidence in the record considered as a whole.' 33 U.S.C. Sec. 921(b)(3); Haywood v. Secretary of Health and Human Services, 699 F.2d 277, 285 (6th Cir. 1983). If the ALJ's decision is supported by substantial evidence, this court must affirm even if it would take a different view as the trier of fact. Moore v. Califano, 633 F.2d 727, 729 (6th Cir. 1980); Elkins v. Secretary of Health and Human Services, 658 F.2d 437, 439 (6th Cir. 1981).
 
 
 15
 While 'the claimant has the burden of proving by a preponderance of the evidence all the facts necessary to establish the presumption . . .,' Consolidation Coal Co. v. Sanati, 713 F.2d 480, 481-82 (4th Cir. 1983), '[o]nce the claimant has satisfied the requirements of the interim presumption, he has established a prima facie case of total disability,' Taft v. Alabama By-Products Corp., 733 F.2d 1518, 1521 (11th Cir. 1984); Prokes v. Mathews, 559 F.2d 1057, 1060 (6th Cir. 1977). A presumption is properly rebutted when it is affirmatively shown that the claimant does not suffer from pneumoconiosis, Hatfield v. Secretary of Health and Human Services, 743 F.2d 1150, 1157 (6th Cir. 1984), or when there is an absolute absence of chronic lung disease in any of the medical records, Director, Office of Workers' Compensation Programs v. Congleton, 743 F.2d 428, 431 (6th Cir. 1984). The burden of rebutting is on the operator, United States Steel Corp. v. Gray, 588 F.2d 1022, 1028 (5th Cir. 1979), and this is a burden of persuasion, not merely production, Alabama By-Products Corp. v. Killingsworth, 733 F.2d 1511, 1514 (11th Cir. 1984); Gibas v. Saginaw Mining, 748 F.2d 1112, 1120 (6th Cir. 1984), cert. denied, 105 S. Ct. 2357 (1985); Ramey v. Kentland Elkhorn Coal Corp., 755 F.2d 485, 492 (6th Cir. 1985).
 
 A.
 
 16
 The ALJ held that the presumption of disability had been rebutted pursuant to 20 C.F.R. Sec. 727.203(b)(2), (3) which provides:
 
 
 17
 In adjudicating a claim under this subpart, all relevant medical evidence shall be considered. The presumption in paragraph (a) of this section shall be rebutted if:
 
 
 18
 (2) In light of all relevant evidence it is established that the individual is able to do his usual coal mine work or comparable and gainful work (see Sec. 410.412(a)(1) of this title); or
 
 
 19
 (3) The evidence establishes that the total disability or death of the miner did not arise in whole or in part out of coal mine employment.
 
 20 C.F.R. Sec. 410.412(a)(1) provides:
 
 20
 A miner shall be considered totally disabled due to pneumoconiosis if:
 
 
 21
 (1) His pneumoconiosis prevents him from engaging in gainful work in the immediate area of his residence requiring the skills and abilities comparable to those of any work in a mine or mines in which he previously engaged with some regularity and over a substantial period of time.
 
 
 22
 Section 410.412(a)(1) refers to sections 410.424 through 410.426.
 
 
 23
 Section 410.424(a) provides that 'medical considerations alone shall not justify a finding that an individual is (or was) totally disabled if other evidence rebuts such a finding, e.g., the individual is (or was) engaged in comparable and gainful work (see Sec. 410.412).' 20 C.F.R. Sec. 410.426(a) provides that pneumoconiosis will be found disabling if 'the miner is (or was) not only unable to do his previous coal mine work, but also cannot (or could not), considering his age, his education, and work experience, engage in any other kind of comparable and gainful work . . . available to him in the immediate area of his residence.'
 
 
 24
 When the operator seeks to rebut by showing that a miner can do his previous coal mine work, medical evidence alone can rebut the presumption. Ramey, 755 F.2d at 489-90. However, when the operator seeks to establish that the worker can do comparable gainful work, vocational evidence is necessary although it is not necessary to show that claimant has a reasonable opportunity to be hired. Id. at 488 n.5; Shamrock Coal Co. v. Lee, 751 F.2d 187 (6th Cir. 1985). See Kolesar v. Youghiogheny and Ohio Coal Co., 760 F.2d 728 (6th Cir. 1985) (age is a proper consideration in determining whether the presumption is rebutted by a showing of ability to engage in comparable or gainful work.)
 
 
 25
 The evidence in this case almost unanimously confirms that claimant suffers from pneumoconiosis. The ALJ ignored the fact that Drs. West, O'Neill, Penman, and Anderson all would recommend that claimant no longer be exposed to coal dust. Dr. Anderson did not find that claimant could do his usual coal mine work, but that claimant could do hard manual labor. When claimant's physicians all recommend no further exposure to coal dust in light of an already accrued case of pneumoconiosis, a claimant can no longer return to his usual coal mine work. Accordingly, the ALJ's determination that claimant could do his usual coal mine work is not supported by substantial evidence. Further, the record is devoid of vocational evidence which might demonstrate that there is hard manual labor in the community which claimant can engage in. The fact that Dr. Anderson indicated that claimant could do such work does not mean that such work is available. Accordingly, substantial evidence does not support the conclusion that the preemption was rebutted pursuant to 20 C.F.R. Sec. 727.203(b)(2).
 
 B.
 
 26
 The employer may rebut the presumption of disability by showing that the disability 'did not arise in whole or in part out of coal mine employment.' Sec. 727.203(b)(3). The ALJ found that the employer had rebutted the presumption because both Drs. O'Neill and Anderson listed arteriosclerotic heart disease among their diagnoses. We note, however, that both doctors also diagnosed pneumoconiosis and listed it as their first diagnosis. We have recently set out the standards for evaluating rebuttal evidence under subsection 203(b)(3).
 
 
 27
 [T]he employer must establish that pneumoconiosis was not a 'contributing cause' to the coal miner's disability. Gibas v. Saginaw Mining Co., 748 F.2d 1112, 1120 (6th Cir. 1984), cert. denied, 105 S. Ct. 2357 (1985); Ramey v. Kentland Elkhorn Coal Corp., 755 F.2d 485, 492 (6th Cir. 1985).
 
 
 28
 Generally, the issue of whether pneumoconiosis is a contributing cause to a miner's disability arises when the ALJ determines that the miner has pneumoconiosis to some extent but that the miner's disability is attributable to another disease. See Ramey, 755 at 490-92 (miner had both pneumoconiosis and heart disease); Gibas, 748 F.2d at 1120 (miner had pneumoconiosis and cardiovascular problems). In such cases, the burden is on the employer to establish that pneumoconiosis did not contribute to the disabling disease. See Ramey, 755 F.2d at 492 (miner's cardiac condition sole cause of disability); Gibas, 748 F.2d at 1114-15 & 1120 (pneumoconiosis found to contribute to cardiovascular problems). In the case at bar, however, not one of the three doctors relied upon by the ALJ found any evidence of pneumoconiosis. Clearly, if Moseley does not suffer from pneumoconiosis to any extent, penumoconiosis cannot be a contributing cause to his heart disease. We hold, therefore, that the employer presented sufficient evidence to establish that Moseley's disability did not arise in whole or in part from coal mine employment.
 
 
 29
 Moseley v. Peabody Coal Co., 769 F.2d 357, 361-62 (6th Cir. 1985).
 
 
 30
 The ALJ did not find that heart disease was the sole cause of disability, as did the court in Ramey. It is the employer's burden to show that pneumoconiosis was not a 'contributing cause.' The medical evidence in this case is substantially to the contrary. Seven physicians read x-rays as showing penumoconiosis (West, Anderson, O'Neill, Penman, Hicks, Cole, Stokes) and four suggested that such disease was attributable to exposure to coal dust. The evidence of pulmonary function studies was mixed. On this record, there is no substantial evidence supporting the conclusion that pneumoconiosis was not a contributing cause of claimant's disability. Accordingly, substantial evidence does not support the conclusion that the presumption was rebutted pursuant to 20 C.F.R. Sec. 727.203(b)(3).
 
 
 31
 Accordingly, the petition for review is GRANTED, and the decision of the ALJ is reversed and the case is remanded for an award of benefits.
 
 
 
 *
 The Honorable Robert E. DeMascio, United States District Judge for the Eastern District of Michigan, sitting by designation